UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Edward Herbst

    v.                                      Civil No. 09-cv-233-JL
                                              Opinion No. 2011 DNH 072
L.B.O. Holding, Inc., d/b/a
Attitash Bear Peak Resort

**MEMORANDUM ORDER**

     This case arises from injuries, including a broken ankle, that plaintiff Edward Herbst suffered after falling off an alpine slide at Attitash Bear Peak Resort, a ski area in Bartlett, New Hampshire that offers the slide as a summer recreational activity. Herbst brought suit against the resort's owner, L.B.O. Holding, Inc. ("Attitash"), asserting claims for strict products liability and negligence. Specifically, he alleges that the slide is unreasonably dangerous to its riders, that Attitash was negligent in operating it, and that Attitash failed to adequately instruct and warn Herbst on its proper use. Attitash denies those allegations and asserts that Herbst's own negligence caused the accident. This court has subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) (diversity).

     Both parties have moved in limine to admit or exclude various types of evidence at the upcoming jury trial, currently scheduled for May 2011. See L.R. 16.2(b)(3). Specifically, Attitash has moved to admit evidence of Herbst's prior conviction for mail fraud, to exclude evidence of the face amount of

Herbst's medical bills, and to preclude Herbst's expert witness from testifying about the adequacy of the slide's warnings. Herbst, in turn, has moved to admit evidence of prior and subsequent accidents on Attitash's alpine slide. Following oral argument, this court rules on the limine motions as set forth below.

### I.  Attitash's motion to admit prior conviction[1]

Attitash has moved to admit evidence that Herbst was convicted of felony mail fraud, see 18 U.S.C. § 1341, in a New York federal court on July 30, 1999, when he was 46 years old. See United States v. Herbst, No. 98-cr-771-001 (S.D.N.Y. July 27, 1999). Specifically, Herbst pled guilty to using the mails in connection with bribing an employee of the New York City Department of Finance to reduce or eliminate his overdue property taxes and interest. He served a three-month prison sentence, ending on or before January 1, 2000, and then remained on supervised release for a period of three years.

As a general rule, "evidence that any witness has been convicted of a crime shall be admitted" for impeachment purposes "if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty

---

[1] Document no. 19.

or false statement by the witness." Fed. R. Evid. 609(a)(2). Herbst concedes that his mail fraud conviction involved dishonesty or false statement and therefore falls within that rule. See, e.g., United States v. Orlando-Figueroa, 229 F.3d 33, 46 (1st Cir. 2000).

But evidence of such a conviction "is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is later, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect." Fed. R. Evid. 609(b).[2]

More than ten years have passed since Herbst was released from the confinement imposed for his mail fraud conviction. Attitash argues that Herbst is to blame for that fact, because he waited nearly three years after his 2006 accident to bring this action, and then requested a trial continuance in 2010. But Attitash has not shown that Herbst acted improperly in either regard, or that he "manipulated either the calendar or the scheduling process in order to postpone the trial and allow the

---

[2] Rule 609(b) also requires "sufficient advance written notice to provide the adverse party with a fair opportunity to contest the use" of the prior conviction, which Herbst concedes he has received.

clock to run on [his] conviction."[3] United States v. Nguyen, 542 F.3d 275, 280 (1st Cir. 2008) (rejecting a similar argument that "had [the] trial started a few months earlier--as did the trial of [certain] codefendants--the ten-year window would have remained open"). So there is no reason not to apply Rule 609(b) here. Id. at 281.

"Given the tenor of Rule 609(b), common sense suggests that felony convictions more than ten years old should be admitted only sparingly and in especially compelling circumstances," based on a "particularized showing" that their probative value substantially outweighs their prejudicial effect. Id. at 278 (citing 4 Jack B. Weinstein & Margaret A. Berger, Weinstein's Federal Evidence § 609.06[1] (2d ed. 2007)). Factors to consider in making that determination "may include (i) the impeachment value of the particular convictions, (ii) their immediacy or remoteness . . .; (iii) the degree of potential prejudice that they portend; (iv) the importance of the defendant's testimony; and (v) the salience of the credibility issue in the circumstances of the particular case." United States v. Brito, 427 F.3d 53, 64 (1st Cir. 2005).

---

[3] Indeed, personal injury actions are routinely brought near the end of the limitations period, so as to allow the nature of the injury to become fully understood.

Here, Herbst's mail fraud conviction has a direct bearing on his credibility and veracity, and thus a high degree of impeachment value. He demonstrated a willingness to defraud others to improve his own financial situation. Because Herbst is the primary, and in some respects only, witness to his accident and the ride(s) leading up to it (which allegedly affected his state of mind, making him feel the need to slide faster), and because Attitash contends that Herbst himself was at fault for the accident, his testimony is likely to be of great importance at trial, and his credibility is likely to be a particularly salient issue for the jury.

"Of course, the mere fact that [a witness's] credibility is in issue . . . cannot, by itself, justify admission of evidence of convictions over ten years old," because that "would make the ten year limit in Rule 609(b) meaningless." United States v. Brown, 603 F.2d 1022, 1028 (1st Cir. 1979). But the case for admitting evidence of Herbst's mail fraud conviction is especially compelling here, given the fraudulent nature of his crime, the likely importance of his testimony and credibility with regard to events that only he (and, in some respects, his daughter) witnessed, and that his conviction, which occurred when he was 46 years old, is barely older than ten years.[4]

---

[4] In fact, as noted supra, had this action been filed earlier, or trial not been continued, impeachment would have been permitted under Rule 609(a).

While the admission of a prior felony conviction always carries some risk of prejudice, that risk is much lower here than it would be, for example, in a criminal case brought against Herbst. See, e.g., Orlando-Figueroa, 229 F.3d at 46 (noting that "Rule 609 is primarily concerned with potential unfairness to a [criminal] defendant when his prior convictions are offered" and concluding that, even under the particular circumstances of that criminal case, the court could have admitted evidence of a witness's mail fraud conviction under Rule 609(b), over the defendant's objection).

The risk of prejudice is further reduced because Herbst suffered objectively verifiable injuries in the accident (including a broken ankle) and is not the only person who has done so in recent years. See Part IV, infra. Given that evidence, the jury is unlikely to regard the accident itself, or Herbst's decision to bring this lawsuit, as fraudulent, or to reject his claims merely because he has a criminal history. Rather, it is likely to consider Herbst's conviction for the limited, and proper, purpose of determining whether to believe his specific testimony regarding his conduct on the slide, the reasons for it (including his state of mind), and the pain and suffering it caused him.

Having considered the specific facts and circumstances of this case, the court concludes that the probative value of

Herbst's mail fraud conviction substantially outweighs its prejudicial effect, and that it is in the interests of justice to admit it into evidence.  Attitash's motion to admit that evidence is therefore granted.  To further reduce any risk of prejudice, Herbst may request a limiting instruction to the jury, both when the evidence is admitted and in the final jury charge.  See, e.g., United States v. Tracy, 36 F.3d 187, 194 (1st Cir. 1994).

## II.  Attitash's motion to exclude medical bills[5]

Attitash has moved to preclude Herbst from introducing evidence of the face amounts of his medical bills, arguing that the reasonable value of medical services is the amount actually paid for them (here, by Medicaid), not the higher amount billed.  This court has repeatedly refused, however, "'to exclude evidence of the billed cost of medical services' in favor of 'the amounts actually paid' in satisfaction of those costs by the plaintiff's health insurers."  Reed v. Nat'l Council of Boy Scouts of Am., Inc., 706 F. Supp. 2d 180, 190 (D.N.H. 2010) (quoting Aumand v. Dartmouth Hitchcock Med. Ctr., 611 F. Supp. 2d 78, 91 (D.N.H. 2009)); see also Bartlett v. Mut. Pharm. Co., 2010 DNH 125, 2010 WL 3156555, at * 2; Williamson v. Odyssey House, Inc., 2000 DNH 238, 2000 WL 1745101, at *1 (DiClerico, D.J.).

---

[5]Document no. 20.

As explained more fully in those decisions, Medicaid write-offs fall within the scope of New Hampshire's collateral source rule, which "provides that 'if a plaintiff is compensated in whole or part for his damages by some source independent of the tort-feasor, he is still permitted to make full recovery against the tort-feasor.'" Reed, 706 F. Supp. 2d at 190 (quoting Moulton v. Groveton Papers Co., 114 N.H. 505, 509 (1974)).  Accordingly, this court has not only permitted plaintiffs to present evidence of the amounts billed, but has prohibited defendants from presenting evidence of the amounts actually paid, deeming such evidence unfairly prejudicial.  See, e.g., Bartlett, 2010 WL 3156555, at *2 (citing Fed. R. Evid. 403).

Attitash notes that a number of New Hampshire Superior Court judges have reached the opposite conclusion.  But this court considered much, if not all, of that case law in Reed, which noted that there is Superior Court precedent in both directions and announced that "unless and until this state's version of the collateral source rule is changed by the New Hampshire legislature or New Hampshire Supreme Court, this court will continue to apply it to billed amounts 'written off' by a plaintiff's providers, in accordance with existing law here and

in the vast majority of other jurisdictions." 706 F. Supp. 2d at 190, 194.[6]

Attitash's motion in limine is therefore denied. It is important to note, however, that Attitash may still challenge whether the billed amounts reflect the reasonable value of Herbst's medical services, provided it does not use evidence of the Medicaid write-offs to do so, and otherwise complies with the rules of evidence. See Bartlett, 2010 WL 3156555, at *2 (citing Reed, 706 F. Supp. 2d at 194).

### III.  **Attitash's motion to exclude expert testimony on warnings**[7]

Attitash has also moved to preclude Herbst's expert witness, engineer John Mroszczyk, from testifying that the slide's warnings were inadequate, arguing that no such opinion was disclosed in his expert report. See Fed. R. Civ. P. 26(a)(2)(B) (expert "report must contain . . . a complete statement of all opinions the witness will express and the basis and reasons for

---

[6]This is not to say, however, that the court finds the contrary Superior Court decisions wholly unpersuasive, at least as a policy matter, particularly in the context of private health insurance (as opposed to Medicaid or other public health insurance). But it is this state's legislature--or, with respect to common-law rules, its Supreme Court--which decides such matters, not this court.

[7]Document no. 34. The court discussed this issue with the parties at oral argument (before Attitash's motion had been filed) and then gave both parties an opportunity to brief it before trial.

them") and 37(c)(1) (where "a party fails to provide information . . . as required by Rule 26(a)," it "is not allowed to use that information . . . at a trial, unless the failure was substantially justified or is harmless").  The only warning-related opinion expressly set forth in Mroszczyk's report was that the slide had "a number of instruction and warning signs at the slide loading area" (photos of which he attached to the report), but "no speed limit signs posted along the slide."

Herbst concedes "that it would certainly have been preferable to ensure that Mroszczyk clearly expressed his opinion" about the warnings in his expert report, see document no. 33, at 4, but nevertheless argues that it is a reasonable inference from the report that he considers the warnings inadequate, and that he should therefore be allowed to offer that opinion at trial.  See, e.g., Metavante Corp. v. Emigrant Sav. Bank, 619 F.3d 748, 762 (7th Cir. 2010) (expert report need not "replicate every word that the expert might say on the stand," as long as it sufficiently "convey[s] the substance of the expert's opinion . . . so that the opponent will be ready to rebut, to cross-examine, and to offer a competing expert, if necessary") (quotation omitted).

Herbst has submitted an affidavit from Mroszczyk clarifying that he "do[es] not believe that any warning in a sign regarding the particular problems" that Herbst encountered on the alpine

10

slide "would be adequate to make this ride safe," i.e., he "do[es] not believe that this condition in the slide could be made safe by warnings." Document no. 33-1, at 2. This court agrees that such an opinion can be reasonably inferred from his report, which, after noting the existing signs and the lack of speed limits, states that riders have no ability to gauge their speed anyway and that, even "at a reasonable speed," they could still "leave the track." The strong implication is that no warning would be adequate.

The problem with that opinion, at least for Herbst, is that it means that Attitash's alleged failure to warn did not cause his accident and injuries, because, according to Mroszczyk, no warning would have been adequate to protect Herbst from the particular problems he encountered. See, e.g., Trull v. Volkswagen of Am., Inc., 145 N.H. 259, 264 (2000) ("failure to warn must be [a] proximate cause of plaintiff's injuries"); LeBlanc v. Am. Honda Motor Co., 141 N.H. 579, 586 (1997) ("[t]he issue in [a] failure to warn claim . . . is whether the danger . . . was or could have been made reasonable by the issuance of adequate warnings"). In other words, the opinion supports Herbst's unreasonable dangerousness theory, but at the expense of his failure-to-warn theory.

Nevertheless, if Herbst wishes to offer Mroszczyk's opinion at trial that the slide's warnings were inadequate because no

11

warning regarding the particular problems that Herbst encountered would have made the ride safe, this court will allow him to do so. While not expressly disclosed in Mroszczyk's report, that opinion can be reasonably inferred from the substance of the report, and Attitash has received sufficient notice to "be ready to rebut [it], to cross-examine, and to offer a competing expert, if necessary." Metavante, 619 F.3d at 762. Attitash's motion to exclude such testimony is denied.[8]

### IV. Herbst's motion to admit evidence of other accidents[9]

Herbst, in turn, has moved to admit evidence of various other accidents on Attitash's alpine slide, including 21 that occurred between 2004 and 2006 (either prior to or just after his accident), and also one that his expert witness, Mroszczyk, happened to observe in 2010 while conducting a site visit for purposes of inspecting the slide and preparing his expert report in this case.[10] Attitash objects that those accidents were not

---

[8] Mroszczyk should be careful, however, not to venture beyond the limited opinion set forth above, or to suggest (contrary to that opinion) that some other warning by Attitash would have been adequate to prevent Herbst's accident.

[9] Document no. 15.

[10] Herbst initially sought to admit evidence of even more accidents, including some involving collisions between two riders. At oral argument and in his subsequent briefing, however, he narrowed his request to those accidents that he considers most similar to his own.

substantially similar to Herbst's accident and that, in any event, evidence of other accidents--particularly the one Mroszczyk witnessed in 2010--would be unfairly prejudicial, would confuse the jury, and would unduly delay the trial. See Fed. R. Evid. 403.

"Evidence of prior accidents is admissible . . . only if the proponent of the evidence shows that the accidents occurred under circumstances substantially similar to those at issue in the case at bar." Moulton v. Rival Co., 116 F.3d 22, 26-27 (1st Cir. 1997) (quoting McKinnon v. Skil Corp., 638 F.2d 270, 277 (1st Cir. 1981)). Both parties agree that the same requirement applies to subsequent accidents, as other courts have held. See, e.g., Reddin v. Robinson Prop. Group, LP, 239 F.3d 756, 760 (5th Cir. 2001). "At bottom, the 'substantially similar' requirement is a more particularized approach to the requirement that evidence be probative." Trull v. Volkswagen of Am., Inc., 187 F.3d 88, 98 n.9 (1st Cir. 1999).

"'Substantial similarity' is a function of the theory of the case." Moulton, 116 F.3d at 27. Here, Herbst's theory (supported by expert testimony) is that Attitash's alpine slide causes riders to move side-to-side within the slide and sometimes to lose control, particularly through curves; and that if a rider reaches the end of a curve embankment in that state, there is a risk of falling off the slide, as allegedly happened in his

13

accident. According to Herbst's expert, many curves in the slide pose that risk. In light of that theory, this court construes "substantially similar" to mean, for purposes of this case, that the rider in the other accident must have lost control around a curve and fallen off the slide.

### A. *2004-2006 accidents*

Herbst has made evidentiary proffers regarding each of the accidents at issue. For the 21 accidents occurring between 2004 and 2006, he has submitted accident reports (6 from the New Hampshire Department of Safety and 15 from Attitash itself). The reports, however, provide very little detail. Most of them indicate that the rider fell off the slide, but not how or where it happened. Mroszczyk believes that each accident "probably" involved loss of control and ejection around a curve, because riders ordinarily would not fall off the slide on a straightaway. But at least two of the accidents were described as occurring on a straightaway, and some had other causes (e.g., a squirrel in the track). So that assumption seems flawed.

This court has closely reviewed each of the accident reports and finds that Herbst has met his burden of showing substantial similarity only as to four accidents:

- the accident on July 12, 2005 (where the rider "came through [the] dip, came to next set of banks, came out of track");

- the accident on July 23, 2005 (where the "sled came off track" near a bank);

- the accident on August 3, 2005 (where the rider "hit the curve, jumped the track"); and

- the accident on July 16, 2006 (where the rider "came from a right turn into a left turn and his cart flew off").

All of the other accidents involved materially different circumstances, or at least were not sufficiently described for this court to deem them substantially similar. See, e.g., Downey v. Bob's Disc. Furniture Holdings, Inc., 633 F.3d 1, 9 (1st Cir. 2011) (affirming the exclusion of such evidence where plaintiffs proffered only a "bare bones" printout containing a "cryptic description" of prior incidents, with "no details," and "conducted no investigation into the underlying facts").[11]

Attitash argues that evidence of even the substantially similar accidents should be excluded as unfairly prejudicial, confusing to the jury, and likely to unduly delay the trial. See Fed. R. Evid. 403. But this court sees little to no risk in any of those respects. Because the accident reports provide so

---

[11]Herbst argues that Attitash admitted, in an interrogatory, that all 15 of the accident reports it produced involved "accidents similar to the plaintiff's: where an operator left the track and was injured." But, for purposes of discovery, "a flexible treatment of relevance is required and the making of discovery . . . is not a concession or determination of relevance for purposes of trial," or admissibility. Fed. R. Civ. P. 26(b)(1), advisory committee notes (1970). Attitash's interrogatory answer was not an admission of substantial similarity within the meaning of Moulton.

little detail, and appear to be the only available evidence of what happened, the use of such evidence will necessarily be limited in scope.  Its main purpose is simply to show that riders occasionally lose control and fall off the track around a curve, as Herbst did, and that Attitash had notice of that risk.  That is a proper and probative purpose, which outweighs any of the countervailing concerns listed in Rule 403.

This court therefore grants Herbst's request to admit evidence of the four accidents noted above, but denies his request to admit evidence of the other accidents between 2004 and 2006.  If Herbst believes that this court has overlooked any accident(s) with circumstances comparably similar to those four accidents, or has additional evidence of substantial similarity beyond that proffered to date, he may raise that issue and/or make a further evidentiary proffer at trial, outside the presence of the jury.

### B.  *2010 accident*

For the accident in 2010, Herbst has submitted an affidavit from Mroszczyk explaining what he observed.  According to Mroszczyk, that accident, like Herbst's, involved a rider's loss of control, side-to-side movement within the slide, and then ejection from the slide around a curve (albeit a different curve,

more than 100 feet down the slide from where Herbst fell). Mroszczyk claims that sequence of events "is precisely what I believe occurred to Mr. Herbst." Based on that proffer, this court finds that Herbst has sufficiently shown that the 2010 accident was substantially similar to his own, clearing that hurdle for admissibility.[12]

Attitash argues that evidence of the 2010 accident should nevertheless be excluded as unfairly prejudicial, confusing to the jury, and likely to unduly delay the trial. See Fed. R. Evid. 403. It is true that such evidence may pose some risk of prejudice and juror confusion, since the accident happened, incidentally, on the day when Herbst's expert was inspecting the slide, which might suggest to the jury that accidents happen on the alpine slide with greater frequency than they actually do. Attitash, though, has the ability to present evidence of how

---

[12]Attitash argues that the 2010 accident resulted from the rider going airborne over a slide feature called "the dip" (not from being ejected around a curve), but that strikes the court as implausible, given the considerable distance between the dip and the place where the rider landed. Attitash has not proffered any evidence to support that version of events. In any event, if Attitash wishes to challenge Mroszczyk's testimony regarding how that accident happened, it may do so at trial. An adjuster from Attitash's insurance company also witnessed the accident and could be called as a witness.

17

often accidents actually happen.[13] The jury should not have any trouble understanding or accepting that the timing was just a coincidence.

Conversely, evidence of the 2010 accident has very high probative value. Mroszczyk's direct observation of an accident substantially similar to the one that Herbst suffered has the ability to inform, and even corroborate, his expert opinions about what happened to Herbst, and the reason(s) for it. That firsthand experience could make his testimony much more persuasive and helpful to the jury, whereas preventing him from discussing the accident could leave the jury with an incomplete, and potentially inaccurate, understanding of the basis for and reliability of his opinions.

On balance, this court concludes that the probative value of the 2010 accident outweighs the risk of prejudice and juror confusion, and therefore grants Herbst's motion to admit evidence of that accident. As to Attitash's argument that such evidence will cause undue delay, this court doubts that will happen, but will keep that concern in mind during trial and will be open to any proposals that Attitash may have (short of outright exclusion) for reasonably limiting the amount of such evidence,

---

[13] The standard for defendants to introduce evidence of prior accidents is more lenient than for plaintiffs. See Trull, 187 F.3d at 98 n.9.

and the manner in which it is presented, so as to avoid undue delay and reduce the risk of prejudice.

## V. Conclusion

For the reasons set forth above, Attitash's motion to admit evidence of Herbst's prior conviction[14] is GRANTED, Attitash's motion to exclude evidence of Herbst's medical bills[15] is DENIED, Attitash's motion to preclude Mroszczyk from testifying about the slide's warnings[16] is DENIED, and Herbst's motion to admit evidence of prior and subsequent accidents[17] is GRANTED in part and DENIED in part.

**SO ORDERED.**

_____
Joseph N. Laplante
United States District Judge

Dated: May 2, 2011

cc: R. Peter Taylor, Esq.
    Thomas Quarles, Jr., Esq.

---

[14]Document no. 19.

[15]Document no. 20.

[16]Document no. 34.

[17]Document no. 15.